The GARY–NORTHWEST INDIANA WOMEN'S SERVICES, INC., et al., Plaintiffs,

v.

Otis BOWEN, Governor of the State of Indiana, et al., Defendants.

No. H 74 289.

United States District Court,
N. D. Indiana,
South Bend Division.

Sept. 14, 1976.
Judgment Affirmed Jan. 25, 1977.
See 97 S.Ct. 799.

W. Henry Walker, East Chicago, Ind., Julian B. Wilkins, Chicago, Ill., for plaintiffs.

Darrell K. Diamond, Asst. Atty. Gen., Indianapolis, Ind., for defendants.

Before SPRECHER, Circuit Judge, and ESCHBACH and SHARP, JJ.

## ORDER AND MEMORANDUM

PER CURIAM.

On May 29, 1975 this Court received from plaintiffs a motion for class action certification and determination pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure.

The Court now GRANTS plaintiffs' motion and orders this action to be continued as a class.

Further pursuant to *Planned Parenthood of Central Missouri v. Danforth,* —— U.S. ——, at —— – ——, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976), this Court now enters a permanent injunction prohibiting defendants Bowen, Kowalczyk, Indiana State Board of Health, Paynter, and Sendak, their agents, assigns, successors and all others similarly situated, from enforcing Indiana Abortion Law, IC 1971, 35–1–58.5–2(a)(2) (Burns Ind.Ann.Stat. § 10–108(a)(2)).

## FACTS

On November 13, 1974 the plaintiffs filed their complaint challenging the constitutionality of certain provisions of the Indiana Abortion Law. IC 1971, 35–1–58.5–1 to

35–1–58.5–8 (Burns Ind.Ann.Stat. §§ 10–107–10–114). The plaintiffs were three pregnant women:

1. Brigitte Coe, who was in her third trimester of pregnancy at the time the complaint was filed. She alleged that the conditions and procedures required during the third trimester under the Indiana Statute are too restrictive.

2. Mary Roe, while in her second trimester of pregnancy sought to have an abortion performed at the Gary-Northwest Clinic. She was refused, however, by her physician since the Indiana Statute requires that abortions performed in the second trimester must be performed in a hospital. Indiana Abortion Law, IC 1971, 35–1–58.5–2(b)(2) (Burns Ind.Ann.Stat. § 10–108(b)).

3. Jane Doe, an unmarried minor, 16 years of age who sought an abortion without her parents' consent. She challenges the provision of the Indiana Abortion Law which requires parental consent where the woman is unmarried and is less than 18 years of age. Indiana Abortion Law, IC 1971, 35–1–58.5–2(a)(2) (Burns Ind.Ann. Stat. § 10–108(a)(2)).

Plaintiffs requested a temporary restraining order, preliminary and permanent injunctions, prohibiting the defendants from enforcing the contested provisions of the Indiana Abortion Law and requested this Court to notify the Chief Judge of the United States Court of Appeals for the Seventh Circuit to convene a statutory three judge court to hear this issue.

On November 19, 1974 the Honorable Luther Swygert, Chief Judge of the United States Court of Appeals for the Seventh Circuit designated the Honorable Robert A. Sprecher, United States Circuit Judge for the Seventh Circuit, and the Honorable Jesse Eschbach, United States District Judge for the Northern District of Indiana, to serve with the Honorable Allen Sharp as members of a three judge United States District Court.

On December 13, 1974 a hearing was held to consider the appropriateness of granting temporary relief. The Court treated plaintiffs' request as one for a preliminary injunction. On January 31, 1975 the three judge District Court found:

1. Brigitte Coe not entitled to injunctive relief.

2. Mary Roe not entitled to injunctive relief.

3. Jane Doe entitled to injunctive relief and issued an order preliminarily enjoining the defendant Indiana State Officials named in the caption from enforcing Indiana Abortion Law, IC 1971, 35–1–58.5–2(a)(2) (Burns Ind.Stat.Ann. § 10–108(a)(2)).

On May 29, 1975 plaintiffs filed a motion for class action certification and determination pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure.

## ANALYSIS AND CONCLUSIONS

In order to maintain a class action suit one must meet the requirements of Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure. Under Rule 23(a) the prerequisites to a class action are:

1. The class is so numerous that joinder of all members is impracticable.

2. There are questions of law or fact common to the class.

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class, and

4. The representative parties will fairly and adequately project the interests of the class.

This Court is convinced that Jane Doe is an adequate representative of the class of unmarried pregnant women under 18 years of age. And further, this class clearly meets the requirements of Rule 23(a). In addition, this Court is convinced that plaintiff, Jane Doe, representative class also meets the prerequisite of Rule 23(b). Since it is likely that should this action be maintained separately by individual plaintiffs, inconsistent adjudications may result. Therefore, a class action suit is clearly "superior to other available methods for the fair and efficient adjudication of the controversy". Rule 23(b)(3).

Consequently, it is the determination of this Court that this action may properly be maintained as a class action and that Jane Doe is an adequate representative of the plaintiff class of unmarried pregnant women under 18 years of age.

■ Plaintiff, Jane Doe, challenges the Indiana Abortion Law provision requiring the consent of the unmarried woman's parent or other person *in loco parentis,* if such woman is under 18 years of age. This issue has recently been decided by the United States Supreme Court in *Planned Parenthood of Central Missouri v. Danforth,* —— U.S. ——, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976).

In *Danforth,* the Supreme Court held that states may not require the consent of a parent or person *in loco parentis* as a condition for abortion of an unmarried minor during the last 12 weeks of her pregnancy:

"[t]he state does not have the constitutional authority to give a third party an absolute, and possibly arbitrary, veto over the decision of the physician and his patient to terminate the patient's pregnancy, regardless of the reason for withholding consent.

Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights. See *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Tinker v. Des Moines School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *In Re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)." Id. at ——, 96 S.Ct. at 2843.

Prior to this decision other courts reached similar results. See, *Poe v. Gerstein,* 517 F.2d at 792; *Wolfe v. Schroering,* 388 F.Supp. at 636–637; *Doe v. Rampton,* 366 F.Supp. at 193, 199; *State v. Koome,* 84 Wash.2d 901, 530 F.2d 260 (1975).

It is therefore the decision of this Court, following the precedent set forth in *Danforth,* that the provision in the Indiana Abortion Law, IC 35–1–58.5–2(a)(2) Burns Ind.Stat.Ann. § 10–108(a)(2), which requires the consent of a parent or person *in loco parentis* as a condition for abortion of an unmarried minor during the first 12 weeks of her pregnancy is unconstitutional. This Court now enters a permanent injunction prohibiting defendants Bowen, Kowalczyk, Indiana State Board of Health, Paynter, and Sendak, their agents, assigns, successors, and all others similarly situated, from enforcing IC 35–1–58.5–2(a)(2), Burns Ind. Stat.Ann. § 10–108(a)(2).

## SEPARATE STATEMENT

ALLEN SHARP, District Judge.

I must concur in the order and judgment of this Court in accord with my apparent obligation to follow the precedents of our highest Court. I do so with the greatest reluctance. I write briefly to state the basis of that reluctance.

Over the strong protests of well-reasoned dissents our highest Court has now vested in a mother, regardless of age or parental or marital consent, the absolute right to terminate human life in a clearly identifiable form during the first three months of its existence, and to do so without regard to any particular medical procedure. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Planned Parenthood of Missouri v. Danforth,* —— U.S. ——, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). From the end of the first trimester until viability, the state "may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health. For the stage subsequent to viability, the state in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." *Roe v. Wade,* 410 U.S. at 165, 93 S.Ct. at 732 (1973). These decisions are based on the principle that "the word 'person', as used in the Fourteenth Amendment, does not include the unborn." Id., at 158, 93 S.Ct. at 729.

This result is articulated on the basis of a recently and judicially expanded constitutional right to privacy. This concept found its origin in no specific provision of a written constitution. The concept of privacy was generally a concept of tort law finding its origins in the 1890 Harvard Law Review under the authorship of Warren and Brandeis. Warren and Brandeis, The Right to Privacy, 4 Harv.L.Rev. 193 (1890). It has now become a watery constitutional concept that can run in any direction chosen by at least five members of the highest Court. (See the various opinions in *Griswold v. Conn.*, 361 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)). When such water tends to erode the basic right to life itself under the Fourteenth Amendment, all members of the Judiciary, regardless of where they sit, should be extremely careful. This is manifestly an area for the greatest of judicial restraint.

As one who has been engaged both in the making and following of precedent this writer is well aware that our system presupposes the following of clear precedents by the lower levels of the judiciary. However, when the underlying values involve human life itself, I do not deem it an obligation to mechanically follow a questionable precedent without a stated concern. One of the basic ideas of Western thought has been the sacredness of human life at all stages. That right was apparently secularized in the Fourteenth Amendment. The right to life is the most fundamental human right. As the Supreme Court noted in another context, it is "the right to have rights." *Furman v. Georgia,* 408 U.S. 238, 290, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Those ideas were apparently embodied in the Fourteenth Amendment's basic protections. Congressman John Bingham, who sponsored the Fourteenth Amendment in the House of Representatives, described the Amendment as having universal application and observed that it applied to "any human being." Cong.Globe, 39th Cong., 1st Sess. 1089 (1866). Senator Allen A. Thurman, commenting on the equal protection clause of the Fourteenth Amendment, stated that "[It] covers every human being within the jurisdiction of a state. It was intended to shield the foreigner, to shield the wayfarer, to shield the Indian, the Chinaman, every human being within the jurisdiction of a State from any deprivation of an equal protection of the laws." 3 Cong.Rec. 1794 (1875) (emphasis added). The Supreme Court has ruled that, whether or not the unborn child is a human being, he is not a person. *Roe v. Wade,* supra. This implicitly accepts the concept that innocent human beings can be declared non-persons and thereby deprived of constitutional protection. Given the nature of constitutional adjudication there will undoubtedly be pressures to extend this concept of non-persons. My concept of the proper functioning of precedent has always included a hard look at precedents whose basis should be reexamined. See *Theis v. Heuer,* 149 Ind.App. 52, 270 N.E.2d 764; Ind., 280 N.E.2d 300 (1971). This writer respectfully suggests that we ought to reexamine the denial of personhood to all unborn children.

In his classical dissent, Mr. Justice Frankfurter in *Baker v. Carr,* 369 U.S. 186 at page 266, 330, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), suggested the Court was inviting itself into a political thicket. A most casual reading of the reported decisions of the Federal Judiciary since 1962 will easily demonstrate the accuracy of that prediction. One might also accurately predict that the Court has now invited itself into a medical and moral thicket. We cannot soon foresee our early extrication therefrom.

More than two decades ago Mr. Justice Jackson reminded us that the basic uniqueness of the highest Court is finality. (See concurring opinion of Jackson, J., in *Brown v. Allen,* 344 U.S. 443, 540, 73 S.Ct. 397, 97 L.Ed. 469 (1953)). That comment is most appropriate in the context of these cases. With the highest personal regard for those nine men, finality does not always insure wisdom. See *Dred Scott v. Sandford,* 60 U.S. 393, 19 Howard 393, 15 L.Ed. 691 (1857). It is therefore the right and obligation of all members of this constitutional society to concern themselves with the wisdom of decisions affecting the basics of life

itself. I write here only to express one Judge's deepest concern for those basics.

Neither the courts nor the Legislature should limit by definition the concept of "persons" without the greatest soul searching. That process is at the heart of this brief statement.