The **GARY–NORTHWEST INDIANA WOMEN'S SERVICES, INC.; William R. Lewis, M. D.; Jane Doe; Mary Roe; Brigette Coe; and all others similarly situated, Plaintiffs,**

v.

Otis **BOWEN, Governor of the State of Indiana; Henry Kowalczyk, Lake County Prosecutor; Indiana State Board of Health; William T. Paynter, M. D., State Health Commissioner and the Executive Officer of the Indiana State Board of Health; Theodore Sendak, Attorney General of the State of Indiana; Their Agents, Assigns, Successors, Representatives, Those acting in concert with them, and all others similarly situated, Defendants.**

**No. H 74–289.**

United States District Court,
N. D. Indiana,
South Bend Division.

Sept. 12, 1980.

W. Henry Walker, East Chicago, Ind., Julian B. Wilkins, Jenner & Block, Chicago, Ill., for plaintiffs.

Theodore L. Sendak, Atty. Gen., Darrel K. Diamon, Asst. Atty. Gen., Indianapolis, Ind., Jack Crawford, Lake County Prosecutor, Crown Point, Ind., for defendants.

Before SPRECHER, Circuit Judge, and ESCHBACH, and SHARP, District Judges.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

An abortion clinic, its operator, and certain pregnant women brought this class action challenging the constitutionality of certain provisions of the Indiana abortion statute, IC 35–1–58.5. This action was originally filed on November 13, 1974. A

three–judge district court was convened pursuant to 28 U.S.C. § 2281.[1]

This Court granted the plaintiffs certain preliminary injunctive relief on January 31, 1975: *Gary–Northwest Indiana Women's Services, Inc., v. Bowen*, 418 F.Supp. 9. This Court granted the plaintiffs certain permanent injunctive relief on September 14, 1976: *Gary–Northwest Indiana Women's Services, Inc., v. Bowen*, 421 F.Supp. 734. That final order was affirmed by the Supreme Court of the United States on January 25, 1977: *Bowen v. Gary–Northwest Indiana Women's Services, Inc.*, 429 U.S. 1067, 97 S.Ct. 799, 50 L.Ed.2d 785. The case then lay dormant until February 21, 1980, when the plaintiffs filed a petition for a hearing on the application of Mary Roe [2] for preliminary and permanent injunctive relief against the enforcement of the Indiana abortion statute's hospitalization requirement for all second trimester abortions. An evidentiary hearing was held before Judge Allen Sharp on April 23, 1980. The parties were given time to file supplemental briefs. Judge Sharp referred all matters and issues to all the judges of the panel for consideration and determination.

The plaintiffs are requesting a modification of this Court's previously entered final judgment. In the first order, granting preliminary relief, this Court declined to hold Indiana's hospitalization requirement unconstitutional. In the final order granting permanent relief, this Court declined to modify its previous refusal to rule Indiana's hospitalization requirement unconstitutional. The plaintiffs are requesting this Court to modify its final order and hold the hospitalization requirement unconstitutional.

Modifications of final orders are governed by Fed.R.Civ.P. 60. The plaintiffs request relief from the final judgment on the basis of evidence proving that only one

hospital in Indiana will allow non–therapeutic second trimester abortions and evidence proving that childbirth is more dangerous to a mother's health than certain second trimester abortions.

Even if the plaintiffs' evidence proved the plaintiffs' allegations, this Court's prior ruling would remain unaffected. Accordingly, the requested relief from final judgment will be denied.

## I.

Before reaching the substantive issues of the plaintiffs' petition, an abstention argument must be considered. Both the state attorney general and the Lake County prosecutor have argued that under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), this Court should abstain from this case in order to avoid interfering with the state prosecution of the plaintiff William R. Lewis, M.D., operator of the plaintiff abortion clinic. On February 21, 1980, when the plaintiffs first requested the preliminary and permanent injunctive relief, the plaintiff Dr. Lewis was being prosecuted for violating the Indiana abortion statute. See Plaintiff's Reply Brief filed April 18, 1980. But, before the April 23, 1980, evidentiary hearing, the criminal action against Dr. Lewis had been dismissed. Tr. 7. A criminal statute regulating abortions may be challenged in federal court by persons who otherwise have standing if they are not presently being prosecuted. See *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Neither Dr. Lewis nor any other plaintiff is presently being prosecuted. Abstention does not apply to this case.

## II.

### A.

The plaintiffs' argument is as follows: (1) Only one Indiana hospital, the Methodist

---

1. This section has since been repealed. Jurisdiction over this case nonetheless rests in a three–judge panel because this section was in effect as of the date the complaint was filed. *BT Investment Managers, Inc., v. Lewis*, 559 F.2d 950 (5th Cir. 1977), *Calabi v. Malloy*, 438 F.Supp. 1165 (D.Vt.1977), Act of Aug. 12, 1976, Pub.L.No. 94–381, § 7.

2. The Mary Roe seeking injunctive relief is apparently a class member and not the named plaintiff Mary Roe. See Transcript of Hearing on Plaintiffs' Petition, April 23, 1980, at 65 (hereinafter cited as Tr. ——).

Hospital of Gary, Inc., located in Gary, Indiana, will allow the use of its facilities for the performance of non–therapeutic second trimester abortions; (2) Some indigent women cannot afford the expense of traveling to the Gary Methodist Hospital for the purpose of acquiring a non–therapeutic abortion; (3) Indiana's requirement that all second trimester abortions be performed in a hospital therefore requires some indigent women to bear a child rather than acquire a non–therapeutic second trimester abortion; (4) Childbirth is more dangerous to a mother's health than a second trimester abortion, if the abortion is performed during approximately the first half of the second trimester of pregnancy, and if the dilation and evacuation (D & E) method is used; (5) Therefore, Indiana's hospitalization requirement forces some indigent women to pursue a course of action which is more dangerous to their health than the course of action which they would pursue in the absence of Indiana's hospitalization requirement; (6) Therefore, Indiana's hospitalization requirement does not "reasonably relate to maternal health" and is accordingly unconstitutional. See *Roe v. Wade*, 410 U.S. 113, 164, 93 S.Ct. 705, 732, 35 L.Ed.2d 147 (1973).

In *Roe*, the Supreme Court of the United States summarized the relevant portions of its ruling as follows:

(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

(c) For the stage subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother."

410 U.S. at 164–65, 93 S.Ct. at 732.

The plaintiffs argue that for purposes of determining the constitutionality of regulations, the second trimester must now be divided into two approximately equal time periods. The earlier of these periods is the thirteenth through the eighteenth week of pregnancy. The later of these periods is the nineteenth through the twenty–fourth week of pregnancy.[3]

The plaintiffs do not argue that a hospitalization requirement applying only to late second trimester abortions would be unconstitutional. It is clear that throughout nearly all of the late second trimester, *Roe* holds that a state's only compelling interest is in protecting maternal health. Under *Roe* it is only when the child becomes viable that the state's interest in protecting the child's life becomes compelling. Most children reach viability, given present medical technology, sometime near the twenty–fourth week.[4] Nonetheless, the plaintiffs

---

**3.** It is not clear from the record the exact point at which the plaintiffs believe the second trimester should be divided. However, the plaintiffs' argument is based solely on improvement in the D & E abortion technique. The plaintiff doctor testified that he would not perform D & E abortions as late as the twenty–first week, but that he would perform D & E abortions through the sixteenth week. Tr. 57, 71, 78. Certain statistics introduced indicated that D & E abortions have been performed as late as the twenty–first week. Tr. 78. The eighteenth week is used as a cutoff here because that is the cutoff used in the two district court cases which adopted the plaintiffs' theory. The ultimate ruling in this case renders the specific cutoff irrelevant.

**4.** Seven years ago, in *Roe*, the Supreme Court noted that current technology made a child viable sometime between the twenty–fourth and twenty–eighth week. 410 U.S. at 160, 93 S.Ct. at 730. Some of the plaintiffs' argument seems to imply an attack on Indiana's use of the word "viability". It seems that the plaintiff is arguing that for each specific child the point of viability is so difficult to determine that a state criminal statute using the term is unconstitutionally vague. See Plaintiffs' Supplemental Brief filed May 19, 1980, at page 2. A child's viability is determined by many factors besides the child's prenatal age, including, among other factors, the availability of medical technology capable of providing the child with substitutes for the functions performed by the

agree that *Roe* would allow a hospitalization requirement for abortions performed during the late second trimester because the dangers to the mother are great enough to render a hospitalization requirement reasonably related to maternal health.[5] There is no dispute about the constitutionality of a hospitalization requirement for late second trimester abortions.

The plaintiffs argue only that the hospitalization requirement is unconstitutional when applied to certain early second trimester abortions. Throughout the earlier half of the second trimester, the fetus is clearly not viable, given present medical technology. (Assuming continued progress is our technical ability to provide substitutes for the mother's womb, it is not altogether inconceivable that viability, and a state's compelling interest in preserving the child's life, may well at some future time reach into this time period.) For the present, *Roe* means that a state's only compelling interest during the early second trimester is in maternal health. The plaintiffs argue that a hospitalization requirement applying to certain early second trimester abortions is unconstitutional.

The plaintiffs do not argue that a hospitalization requirement applying only to early second trimester abortion techniques other than D & E would be unconstitutional. The plaintiffs agree that for procedures other than D & E a hospitalization requirement reasonably relates to maternal health. Tr. 22–23. The plaintiffs argue only that certain early second trimester D & E abortions are so safe that applying Indiana's hospitalization to them does not reasonably relate to maternal health.

Furthermore, the plaintiffs' argument may not apply to therapeutic abortions. The plaintiffs appear to argue not that the hospitalization requirement is unconstitutional on its face, but that it is unconstitutional because hospitals are unavailable. Hospitals are available for therapeutic abortions. See Tr. 74–75 and Defendant's Exhibit A. The plaintiffs' argument may apply only to non–therapeutic early second trimester D & E abortions.

Finally, the plaintiffs' argument may not apply to pregnant women financially capable of traveling to the Gary Methodist Hospital to acquire an abortion. The plaintiffs appear to argue that Indiana's hospitalization requirement denies abortions to only certain indigent women, indigent women financially unable to travel to the Gary Methodist Hospital.

The plaintiffs' constitutional arguments seem to apply only to non–therapeutic early second trimester D & E abortions desired by indigent women financially unable to travel to the Gary Methodist Hospital.[6] The plaintiffs argue that since Indiana's hospitalization requirement applies to these abortions, the hospitalization requirement is unconstitutionally overbroad. See Plaintiffs' Supplemental Brief filed May 19, 1980 at page 2.

### B.

To adopt the plaintiffs argument would require this Court to controvert the express language of *Roe*. With regard to second trimester abortions, the Supreme Court of the United States said:

> With respect to the State's important and legitimate interest in the health of the

womb of the child's mother. If this Court were writing on a clean slate, this Court might give serious attention to this argument. However, in *Roe* the Supreme Court of the United States has encouraged, perhaps even required, the use of the term in statutes regulating abortions. This Court could not rule that the Supreme Court of the United States has encouraged the use of an unconstitutionally vague term.

5. See footnote 3, *supra*.

6. It should be noted here that the plaintiffs have presented no evidence that there is, in Indiana, a pregnant woman (1) financially unable to travel to the Gary Methodist Hospital who desires a (2) non–therapeutic (3) early second trimester (4) D & E abortion. Even the plaintiff, Mary Roe, on whose behalf the plaintiff's latest petition has been made, fails to satisfy the criteria since she is a patient of Dr. Lewis, which implies that she is financially able to travel to Gary and the Gary Methodist Hospital, since Dr. Lewis practices medicine in Gary.

mother, the "compelling" point, in light of present medical knowledge, is at approximately the end of the first trimester. This is so because of the now—established medical fact, referred to above at 725 [93 S.Ct. at 724], that until the end of the first trimester mortality in abortion may be less than mortality in normal childbirth. It follows that, from and after this point, a State may regulate the abortion procedure to the extent that the regulation reasonably relates to the preservation and protection of maternal health. *Examples of permissible state regulation in this area are requirements* as to the qualifications of the person who is to perform the abortion; as to the licensure of that person; *as to the facility in which the procedure is to be performed, that is, whether it must be a hospital or may be a clinic or some other place of less–than–hospital status* ; as to the licensing of the facility; and the like.

\* \* \* \* \* \*

To summarize and to repeat:

\* \* \* \* \* \*

For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

410 U.S. at 163–64, 73 S.Ct. at 732 (emphasis added).

The language is clear. A hospitalization requirement for second trimester abortions is constitutional. Indiana and many other states have relied on this interpretation of the language. This Court has "an obligation to follow the precedents of our highest Court." *Gary–Northwest Indiana Women's Services v. Bowen*, 421 F.Supp. 734, 736 (N.D.Ind.1976) (separate statement of Judge Sharp in an earlier decision in this action.) This Court is bound by the language of *Roe*. This Court may not controvert specific rulings of the Supreme Court of the United States. The express language of *Roe* mandates that Indiana's second trimester hospitalization require-

ment be found by this Court to be constitutional.

Several cases have interpreted *Roe* to mean that a second trimester hospitalization requirement is constitutional: *Hodgson v. Lawson*, 542 F.2d 1350 (8th Cir. 1976); *Akron Center for Reproductive Health, Inc., v. City of Akron*, 479 F.Supp. 1172 (N.D.Ohio 1979); *Westchester Women's Health Organization, Inc., v. Whalen*, 475 F.Supp. 734 (S.D.N.Y.1979); and *Wynn v. Scott*, 449 F.Supp. 1302 (N.D.Ill.1978), affirmed sub ṇom., *Wynn v. Carey*, 599 F.2d 193 (7th Cir. 1979). These cases relied generally on the statement in *Roe* that a second trimester hospitalization requirement is constitutionally permissible. Two very recent cases have interpreted *Roe* to mean that a second trimester hospitalization requirement is unconstitutional: *Margaret S. v. Edwards*, 488 F.Supp. 181 (E.D.La.1980), and *Planned Parenthood Ass'n of Kansas City, Mo., Inc. v. Ashcroft*, 483 F.Supp. 679 (W.D.Mo.1980). The plaintiffs rely on these recent cases.

To adopt the plaintiffs' theory and hold Indiana's hospitalization requirement unconstitutional because of its impact on non—therapeutic early second trimester D & E abortions would ultimately require that the second trimester be split for purposes of determining the constitutionality of regulations. Such a holding would require states to adopt, for their maternal health regulations, some cutoff other than the end of the first trimester. The *Roe* language clearly demonstrates the intent of the Supreme Court to encourage, indeed force, states to use the end of the first trimester as a cutoff point for regulations designed to protect maternal health. That is precisely what Indiana and many other states have done. *Roe* implied that states would not be required to treat one portion of the second trimester different from another portion of the second trimester. *Roe* implied that it was proper for states to adopt regulations dealing with the entire second trimester. If a general regulation of second trimester abortions protects maternal health, then, *Roe* holds, the regulation is constitutional,

notwithstanding its impact on a specific second trimester abortion or a specific group of second trimester abortions.

The plaintiffs' argument could be construed as an argument that the *Roe* test to be applied to early second trimester D & E abortions is not the second trimester test, but the first trimester test. This argument could be stated as follows: *Roe* allows regulation not of second trimester abortions, but only of abortions more dangerous than childbirth. This seems to be the theory underlying the two District Court cases supporting the plaintiffs' argument. The specific ultimate rulings in *Roe* with regard to the various stages of pregnancy were somewhat arbitrary judgments necessitated by a wide variety of factors. This Court must respect *Roe*'s specific ultimate rulings. If this Court does not respect the specific ultimate rulings in *Roe*, those rulings will lose their usefulness. If the line which the Supreme Court drew at the end of the first trimester is not respected, states will be hard pressed to pursue their legitimate, compelling, interests in protecting maternal health. If a regulation is covered by *Roe*, the regulation's constitutionality is determined on the basis of the specific lines drawn by the Supreme Court.

If the plaintiffs' theory was adopted, then the states might still be able to remain within constitutional parameters by repealing their current maternal health regulations and enacting regulations applying not to abortions performed "after the first trimester," but to abortions performed "in such a manner and at such a time that they are more dangerous than childbirth." If the Supreme Court had intended the test for determining whether a state could regulate a specific abortion to be the safety of the abortion relative to childbirth, the Supreme Court would have so stated the test. The Supreme Court did not so state the test. The Supreme Court stated the test to be the chronological stage of the pregnancy. Under *Roe*, a maternal health regulation may take effect at the end of the first trimester. If the constitutionality of the regulation depended on whether, as a matter of fact, an abortion was more dangerous

than childbirth, then it must be remembered that each individual pregnancy raises its own set of facts. The safety of a given abortion, the safety of a given childbirth, and the relative safety of an abortion *vis a vis* childbirth in a given pregnancy, all depend on a multitude of medical factors which vary with each and every pregnancy. Such a rule would have the potential of making the constitutionality of each specific application of a regulation depend to a large degree on the factors present in that specific case. If the Supreme Court had intended that complicated medical judgment be decisive on whether specific regulations were reasonably related to maternal health, then the Supreme Court would surely have instead adopted the more rational rule that the abortion's effectuation must be left to the medical judgment of the pregnant woman's attending physician. That was the rule adopted for first trimester abortions. It was the intent of the Supreme Court to allow states to regulate second trimester abortions as a group, and *Roe* holds that as long as the regulation is reasonably related to the maternal health of women in the second trimester of their pregnancy, the regulation is constitutional.

The plaintiffs' argument could also be construed as an argument that Indiana's hospitalization requirement is subject not to the first trimester test, but to the second trimester test, but that the hospitalization requirement does not satisfy the second trimester test. This argument would be applicable exclusively to the regulation as applied to women financially incapable of traveling to the Gary Methodist Hospital. The argument would be that the regulation effectively prevents these women from obtaining an abortion which is less dangerous than childbirth, and that the regulation is therefore not rationally related to maternal health. While the Supreme Court held in *Roe* that states may not constitutionally prohibit certain abortions, the Supreme Court has since held that states are not required to guarantee the practical availability of abortions to indigent women. It follows that in regulating second trimester

abortions, Indiana is not required to guarantee the availability of abortions to indigent women. As long as the regulation is reasonably related to Indiana's compelling interest in protecting maternal health, the regulation is constitutional, without regard to the regulation's practical impact on the availability of abortions to indigent women. In *Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977), the Supreme Court held that it was constitutional for Connecticut to prevent the use of its welfare benefits for non–therapeutic abortions. The Supreme Court said:

> The indigency that may make it difficult–and in some cases, perhaps, impossible–for some women to have abortions is neither created nor in any way affected by the Connecticut regulation. We conclude that the Connecticut regulation does not impinge upon the fundamental right recognized in *Roe*.

432 U.S. at 474, 97 S.Ct. at 2383. The latest Supreme Court abortion cases are the companion cases *Harris v. McRae*, —— U.S. ——, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), and *Williams v. Zbaraz*, —— U.S. ——, 100 S.Ct. 2694, 65 L.Ed.2d 831 (1980), which apply the *Maher v. Roe* reasoning to the refusal by both the federal and state governments to fund certain abortions which were therapeutic. In *Harris v. McRae*, the Supreme Court said:

> [A]lthough government may not place obstacles in the path of a woman's exercise of her freedom of choice, it need not remove those not of its own creation. Indigency falls in the latter category. The financial constraints that restrict an indigent woman's ability to enjoy the full range of constitutionally protected freedom of choice are the product not of governmental restrictions on access to abortions, but rather of her indigency.

—— U.S. at ——, 100 S.Ct. at 2688. The background of *Harris v. McRae* is that the government had been paying welfare benefits for both childbirth and abortions, and the so–called Hyde Amendment prohibited the use of welfare benefits for abortions. The Supreme Court ruled that the combination of the Hyde Amendment and pregnant women's indigency did not render unconstitutional this pursuit of the government's legitimate, though not compelling, interest in encouraging childbirth over abortion. The obstacle which the indigent women faced was not the Hyde Amendment, but the women's indigency. The interest in Indiana is pursuing in its hospitalization requirement is the protection of maternal health, an interest not only legitimate, but compelling. The *Harris v. McRae* reasoning applies *a fortiori* to Indiana's hospitalization requirement. The combination of the hospitalization requirement and the pregnant women's indigency does not render unconstitutional this pursuit of Indiana's legitimate, compelling, interest in protecting maternal health. The obstacle which the women face is not the hospitalization requirement, but the women's indigency. The indigency that may make it difficult–and in some cases, perhaps, impossible–for some women to have abortions is neither created nor in any way affected by the Indiana regulation. The Indiana regulation does not impinge upon the fundamental right recognized in *Roe*.

It would be impractical for the constitutionality of a second trimester regulation to depend on a factual question, such as whether the regulation in fact reduced maternal morbidity and mortality. Interpreting *Roe* to require that second trimester regulations except specific types of abortions which may be safer than childbirth would require relitigation of the regulation's constitutionality with each change in the availability of abortions, with each improvement in abortion technique, and with each publication of statistics showing that abortion skills had improved. Such an interpretation of *Roe* would result in repeated relitigation of the constitutionality of the same statute. It is the policy of the Supreme Court to avoid, if possible, the creation of rules of law which increase litigation. *Roe* should not be given an interpretation which results in repeated relitigation of a statute's constitutionality. *Roe* does not render the constitutionality of second trimester regulations subject to either the

availability of abortions or the improvements in medical techniques and skills.

■ The test for determining the constitutionality of statutes regulating second trimester abortions is not whether the statute has the statistically demonstrable result of decreasing maternal morbidity or mortality for specific groups of abortions. Whether, as a matter of fact, it is statistically demonstrable that the regulation results in decreased maternal morbidity and mortality is a matter to be considered, but it is not the ultimate test. The ultimate test is a broader test: whether the legislature acted reasonably in determining that the regulation would promote maternal health. Furthermore, the statistics used to determine the reasonableness of a regulation would have to be the statistics not for a specific group of abortions, but for all the abortions to which the regulation applies. A statutory regulation of second trimester abortions is constitutional if it was reasonable for the state to conclude that the regulation would promote maternal health.

## C.

■ It was reasonable for Indiana to conclude that the second trimester hospitalization requirement would promote maternal health.

Clearly, it is reasonable for a state to conclude that a hospitalization requirement will promote health. It cannot be seriously disputed that medical risks accompany abortions. It is therefore eminently reasonable to require that abortion be performed in a hospital. Hospitalization may be the most obviously reasonable health–related regulation that there is.[7] That is probably why the Supreme Court of the United States expressly stated that hospitalization would be a regulation reasonably related to maternal health. Indiana's determination that a hospitalization requirement would promote maternal health can be supported by reason. The statutory hospitalization

requirement is reasonably related to maternal health. Accordingly, the statutory hospitalization requirement is constitutional. That was this Court's previous judgment in this case. A contrary ruling would controvert Roe.

### III.

Even if the plaintiffs' legal theory was accurate, the plaintiffs would have failed to justify a preliminary injunction.

While this Court would be required to consider all relevant factors in deciding whether to exercise its discretion in favor of granting a preliminary injunction, the traditional standard for granting a preliminary injunction requires the petitioner to show (1) irreparable injury and (2) a likelihood of success on the merits. Doran v. Salem Inn, Inc., 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); National Tank Truck Carriers, Inc. v. Burke, 608 F.2d 819 (1st Cir. 1979); Butler v. Goldblatt Bros., Inc., 589 F.2d 323 (7th Cir. 1978); Washington v. Walker, 529 F.2d 1062 (7th Cir. 1976).

■ The pregnant women present a clear case of potential irreparable injury. The petition for a preliminary injunction is brought on behalf of women in their second trimester of pregnancy who will allegedly be denied the opportunity to terminate their pregnancies if the challenged portions of the Indiana abortion statute are not held unconstitutional. A pregnancy unterminated will result in a child born, a result which is hardly reclaimable, hardly reparable. And since Roe holds that a fundamental right of privacy includes a fundamental right to an abortion, the birth of an unwanted child must be construed as irreparable "injury."

On the other hand, even if the plaintiffs' legal theory was accurate, they have failed to demonstrate a likelihood of success on the merits. There was presented no evidence sufficient to convince this Court that

---

7. Three Supreme Court Justices have even suggested that Roe might allow states to require hospitalization for first trimester abortions. Sendak v. Arnold, 429 U.S. 968, 97 S.Ct. 476, 50

L.Ed.2d 579 (1976) (Dissent by Justice White, with whom Chief Justice Burger and Justice Rehnquist joined.)

birth is more dangerous than early second trimester D & E abortions. The plaintiff, Dr. Lewis, testified that, in his opinion, a second trimester hospitalization requirement does not reasonably relate to maternal health. Tr. 61. He briefly elaborated on the basis of that opinion. Tr. 62–63. There was some somewhat confusing testimony by Dr. Lewis that the complication rate (a rate including both morbidity and mortality) was either 5.38/100 or 5.88/100 for D & E abortions performed from the thirteenth to the fifteenth week. Tr. 68–69. No comparable statistics for childbirth were given. Dr. Lewis testified that for the United States in 1972–1976 the D & E mortality rate was 7.6/100,000 for the thirteenth to fifteenth week and 13.2/100,000 for the sixteenth to twentieth week. Tr. 78. Defendant's Exhibit B is an affidavit of the Director of the Public Health Records Division of the Indiana State Board of Health, in which the Director states that the Indiana maternal death rate was 7.0/100,000 in 1977 and 10.8/100,000 in 1978. Dr. Lewis testified that the D & E current morbidity rates were lower than those for 1972–1976 because of improved medical practices. Tr. 77. To conclude on the basis of this evidence that early second trimester D & E abortions are safer than childbirth would require this Court to grant Dr. Lewis more credibility than this Court believes he deserves. Dr. Lewis is a plaintiff in this case with a significant pecuniary interest in the outcome. The evidence produced at the hearing was insufficient to persuade this Court that the plaintiff would likely succeed in proving birth more dangerous than an early second trimester D & E abortion.

Thus, even if the plaintiffs' legal theory was accurate, the plaintiffs would have failed to justify a preliminary injunction.

### CONCLUSION

For the reasons stated in Part II, above, this Court's prior final judgment would be unaffected even if the plaintiffs could prove birth more dangerous than early second trimester D & E abortions. Accordingly, the plaintiffs' request for relief from the final judgment heretofore entered in this case is DENIED.