**Walter M. WOLFE, et al., Plaintiffs,**

v.

**Grady STUMBO, et al., Defendants.**

**Civ. A. No. C 80–0285 L(A).**

United States District Court,
W. D. Kentucky,
Louisville Division.

Dec. 3, 1980.

Virginia Collins Burbank, Louisville, Ky., Frank Susman, St. Louis, Mo., for plaintiffs.

Theodore Amshoff, Jr., Alan E. Sears, Robert L. Heleringer, Louisville, Ky., H. Edward Hodskins, Owensboro, Ky., Terry E. Fox, Louisville, Ky., Ann Hunsaker, Terry Morrison, Dept. Human Resources, Frankfort, Ky., Ed Schoenbaechler, David

Lewis, Asst. Comm. Atty., Linda M. Scholle, Louisville, Ky., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALLEN, Chief Judge.

This action presents a constitutional challenge to K.R.S. 311.760(2) and 436.023 and the administrative regulations adopted pursuant to these statutes. In approaching this case, this Court's task is to resolve the issues presented here by constitutional measurement free of emotion and predilection, see *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and pursuing this quest, this Court is bound by the decisions of the United States Supreme Court and the jurisprudence that has evolved.

K.R.S. 311.760(2) provides as follows:

"An abortion may be performed in this state only under the following circumstances:

*        *        *        *        *        *

"(2) After the first trimester of pregnancy, except in cases of emergency to protect the life or health of the pregnant woman, where an abortion is permitted under other provisions of KRS 311.730 to 311.810, by a duly licensed physician in a hospital duly licensed by the Kentucky health facilities and health services certificate of need and licensure board."

K.R.S. 436.023 provides as follows:

"(1) No abortion shall be performed on any woman without the passing of at least a twenty-four (24) hour period between the filing of the written consent, by the required consenting parties, and the actual performance of the abortion unless an emergency situation presents imminent peril substantially endangering the life of the woman.

"(2) Any person violating subsection (1) of this section shall be imprisoned in the county jail not to exceed one (1) year or a fine not to exceed one thousand dollars ($1,000), or both."

The individual plaintiffs are gynecologists and obstetricians one of whom is on the faculty of the University of Louisville Medical School, who performed abortions at the Surgical Arts Centre, Inc. in Louisville, Kentucky (hereinafter referred to as the Clinic). The Clinic is also a plaintiff herein, and is the facility where ninety percent of the abortions performed in Kentucky are carried out.

The record contains convincing proof that no hospitals in Kentucky will allow second trimester abortions to be performed, except for therapeutic reasons, and that abortions which are done for therapeutic reasons constitute a very small portion of the total abortions which are being performed. The evidence further demonstrates that plaintiffs' clientele consists of women from Kentucky, Tennessee, Indiana, Ohio, Illinois and West Virginia, and that sixty percent of these women are nonresidents of Kentucky. It also demonstrates that a substantial number of persons upon whom abortions are performed are women in their teens, and that at least fifty-six percent are 19 years of age or younger.

The method by which plaintiffs carry out their abortion operations is known as the dilatation and evacuation method, hereinafter D&E. The use of the D&E method commenced after the opinion of the Supreme Court in *Roe v. Wade, supra* was handed down, and has now gained widespread acceptance. It is generally recognized by the American Public Health Service and the Gynecology Section of the American Medical Association that it is the safest method of performing second trimester abortions. Statistics offered by the plaintiffs and accepted by the Court indicate also that the abortion mortality rate, using the D&E method, is considerably lower than the mortality rate for women who carry their pregnancies to term. This is especially true for the period of gestation ranging between 18 and 20 weeks.

The weight of the evidence is to the effect also that delays in carrying out abortion procedures increase the risk of complications and mortality, although this Court

is not convinced that such risks in exposure to increased mortality rates are nearly as significant as they are portrayed by the plaintiffs.

There is also convincing evidence to the effect that the women who come to the Clinic have already received a diagnosis of pregnancy and have already made up their minds to have an abortion. The weight of the evidence also is to the effect that to require a twenty-four hour waiting period will impose significant financial burdens and, to some extent, emotional burdens upon women who come to the Clinic from areas outside of Louisville, as so many of them do, and who will be forced in many instances to incur extra expenses during a waiting period, which could be as much as three or four days because of the intervention of a weekend when the consent is given on a Friday.

The evidence demonstrates that the Clinic has performed some 12,000 abortions during its history, and that no mortalities have occurred, and that its facilities for the carrying out of such procedures are on a par with those available in hospitals, except for the fact that a blood supply is not maintained at the Clinic. However, the Clinic is only one block from several hospitals and easy access to the hospitals is available.

Two recent decisions, that of District Judge Elmo B. Hunter in *Planned Parenthood Association of Kansas City, Missouri, Inc. v. Ashcroft*, 483 F.Supp. 679 (W.D.Mo. 1980) and that of District Judge Robert F. Collins in *Margaret S. v. Edwards*, 488 F.Supp. 181 (E.D.La.1980), are persuasive. Also very instructive are the recent United States Court of Appeals for the Sixth Circuit decisions in *Mahoning Women's Center v. Hunter*, 610 F.2d 456 (1979) and *Charles v. Carey*, 627 F.2d 772 (7 Cir. 1980).

In *Planned Parenthood Association of Kansas City v. Ashcroft, supra*, Judge Hunter held that Missouri's Revised Statute 188.025, which is identical to K.R.S. 311.-760(2), was unconstitutional. Judge Hunter found, as does this Court here, that D&E is the safest of the presently available post-twelve week abortion techniques, and he also found that D&E procedures were performed at only one hospital in the State of Missouri. He likewise found that as a result the D&E technique was simply unavailable to many pregnant women in Missouri. He reasoned that the state's limitation of post-twelve week abortions to hospitals cannot stand as a reasonable regulation for the protection of maternal health. He concluded that the effect of the regulations was to make unavailable the most commonly utilized and the safest post-twelve week abortion technique.

He further found that as a practical matter, it might force a woman and her doctor to terminate her pregnancy by a method more dangerous to her health than the method outlawed. He also pointed out that the availability of the D&E procedure in one hospital on the eastern boundary of Kansas did not convince him that D&E was a meaningful and accessible alternative to a large number of women in Missouri because of the distances involved between their homes and the location of the hospital. See 483 F.Supp. at pp. 686–687.

In reaching his decision, we believe that Judge Hunter correctly analyzed *Planned Parenthood v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976), where the Supreme Court had held that a Missouri statutory prohibition on the use of saline instillation as a post-twelve week abortion technique was not a reasonable regulation for the protection of maternal health. The court pointed out at 428 U.S. pp. 78–79, 96 S.Ct. p. 2845:

"The State, . . . would prohibit the use of a method which the record shows is the one most commonly used nationally by physicians after the first trimester and which is safer, with respect to maternal mortality, than even continuation of the pregnancy until normal childbirth. Moreover, as a practical matter, it forces a woman and her physician to terminate her pregnancy by methods more dangerous to her health than the method outlawed."

The Supreme Court also found, in *Planned Parenthood v. Danforth, supra,* that the existence of prostaglandins instillation, a technique actually safer than the saline technique, did not justify the ban on saline, since the prostaglandins alternative was at that time unavailable as a practical matter in the State of Missouri. The court held that the prohibition of the saline technique was unreasonable and arbitrary, since it had the effect of inhibiting the vast majority of abortions after the first twelve weeks.

In *Planned Parenthood Association of Kansas City v. Ashcroft, supra,* Judge Hunter also found that the forty-eight hour waiting period imposed by Missouri statute was an undue burden on the abortion decision, which increased the risk to the woman's health. He found that the forty-eight hour delay could have the effect of a much longer delay due to the nature of physicians' working schedules, and that such a delay has a disproportionate impact on minors who generally seek abortions at a later stage of pregnancy. He also held that the forty-eight hour waiting period imposed additional expenses and time for women living outside the metropolitan areas, but predicated his decision that it was unconstitutional on the health interests of the women seeking abortions. See 483 F.Supp. at p. 696.

In *Margaret S. v. Edwards, supra,* Judge Collins, after finding that the D&E was far safer than any other method of abortion after a twelve-week gestation period, and that it was safer than childbirth up to the eighteenth week, went on to hold that a Louisiana statute which required an abortion after the first trimester to be performed in a hospital was unconstitutional.

After discussing other sections of the Louisiana statute not pertinent here, Judge Collins went on to hold that a twenty-four hour waiting period mandated by the Louisiana statute was unconstitutional because of burdens on the woman's health as a result of a possible wait of as much as three to five days because of weekends. The basis for the holding is that this requirement places a significant and unconstitutional burden upon a woman's ability to obtain an abortion, and that a regulation limiting access to the abortion procedures may be justified only by a "compelling state interest" and must be narrowly drawn to express only the legitimate state interests at stake. See *Roe v. Wade, supra,* 410 U.S. at p. 155, 93 S.Ct. at p. 728 and *Margaret S. v. Edwards, supra,* at pp. 212–213.

In addition to the opinions of Judges Hunter and Collins, we now have the benefit of the opinion of the Seventh Circuit in *Charles v. Carey,* 627 F.2d 772 (1980), and more particularly discussion which appears at pp. 785–786, where it held unconstitutional the twenty-four hour mandatory waiting period. The court held that the twenty-four hour mandatory waiting period imposed increased risks as pregnancy progressed, especially for working women and women who must travel longer distances and who must arrange for overnight accommodations or make two trips. It was held that the statute was subject to strict scrutiny, since it affected the fundamental privacy rights of women who decide to terminate their pregnancies.

Defendants relied heavily upon the decision of the Sixth Circuit in *Wolfe v. Schroering,* 541 F.2d 523 (1976). In that decision, the record is clear that the plaintiffs presented no evidence to show that the twenty-four hour waiting period would, in effect, impose increased health risks or increased financial burdens upon pregnant women seeking an abortion. That fact is made clear by the words of the court itself appearing at p. 526. That case, therefore, is not a precedent for the case at bar in which plaintiffs have, in fact, produced substantial evidence as to the increased risks which would be imposed upon pregnant women by virtue of the required waiting period, as well as evidence of increased expenses and anxiety.

This Court recognizes the significant emotional trauma that may follow a woman's decision as to whether to terminate an unwanted pregnancy. However, the weight of the evidence is to the effect that

the women who come to the Clinic seeking abortions have already made their decisions. The twenty-four hour waiting period will not alter the previously made decision, nor is there evidence suggesting that it would make the decision any less emotionally trying.

The cases upon which the defendants rely, such as *Gary-Northwest Indiana Women's Services, Inc. v. Bowen*, 496 F.Supp. 894 (N.D.Ind.1980), are cases that this Court respectfully disagrees with, since they are based upon a misconception of the holding in *Roe v. Wade, supra*. The writers of those opinions failed to consider that the Supreme Court specifically held as early as 1973 in *Roe v. Wade, supra*, that medical knowledge is not a static thing, and that as medical knowledge and new techniques are evolved, the first trimester limitations may, in some instances, not be controlling. The *Gary-Northwest Indiana Women's Services, Inc. v. Bowen, supra*, case held that it was bound by the language of *Roe v. Wade, supra*, and, that in effect it was graven in stone. This completely overlooks the Supreme Court's reliance on improvements in medical techniques and skills which were involved in the Supreme Court's invalidating the saline instillation legislation in *Planned Parenthood v. Danforth, supra*.

In conclusion, we hold that the statutes challenged by the plaintiff and the regulations adopted pursuant to them are unconstitutional and a judgment in accordance with these findings of fact, conclusions of law and opinion will be entered this day.